**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 12–cv–03214–RM

WANDA L. DESOTE,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1]

    Defendant.

---

**ORDER**

---

    This matter is before the Court on Plaintiff Wanda L. DeSote's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff challenges the final decision of Defendant, Commissioner of the Social Security Administration, by which she denied Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"). The Administrative Law Judge ("ALJ") ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to SSI.

    The Commissioner provided the Court with the administrative record. (ECF Nos. 9; 9-1; 9-2; 9-3; 9-4; 9-5; 9-6; 9-7; 9-8.) The parties have fully briefed the matter and it is ripe for adjudication. (ECF Nos. 13; 14; 16.)

---

[1] In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

For the reasons set forth below, the Court vacates Defendant's denial of Plaintiff's SSI application and remands for further proceedings consistent with this Order.

**I.      BACKGROUND**

Plaintiff applied for SSI in February 2007, alleging she was disabled as of November 1, 1987, due to the following conditions that limit her ability to work: depression, arthritis, sleeping problems, and slow learner. (Admin. R. ("Tr.") at 154-56, 175.) At an oral hearing in this matter, Plaintiff amended her alleged onset date to March 1, 2007. (Tr. 35.) After Plaintiff's application was initially denied, Plaintiff requested a hearing before an ALJ. (Tr. 93-95, 32-48, 81-89.) Plaintiff requested review of the ALJ's decision and, in September 2010, the Appeals Council remanded the case to the ALJ for a second hearing and a new decision. (Tr. 91.) In May 2011, the ALJ held a second hearing (Tr. 49-74) and issued another decision denying Plaintiff's application for SSI (Tr. 14-24). Plaintiff requested the Appeals Council to review the ALJ's decision and such review was denied October 11, 2012. (Tr. 1-6.) Plaintiff timely requested judicial review before the Court.

    **A.      Background and Relevant Medical Evidence[1]**

Plaintiff was born in 1978. (Tr. 154.) Plaintiff has a high school education. (Tr. 42.) Plaintiff has no past relevant work history. (Tr. 23, 71.)

Plaintiff claims she became disabled on March 1, 2007 due to a combination of physical and mental health impairments. (*See* Tr. 35, 175.)

Prior to Plaintiff's SSI application date, Plaintiff received mental health treatment at Spanish Peaks Mental Health Center ("Spanish Peaks"). (Tr. 231-73.) Plaintiff was treated for depression and a personality disorder. (Tr. 271.) Spanish Peaks discharged Plaintiff from

---

[1] The Court will not discuss impairments or conditions that are not at issue in Plaintiff's opening brief, *i.e.*, those other than Plaintiff's alleged mental impairments.

treatment in October 2006 because Plaintiff had missed all scheduled appointments for six months.  (Tr. 271.)  On discharge, Spanish Peaks assigned Plaintiff a global assessment of functioning ("GAF") score of 65.  (Tr. 273.)

Jose Vega, Ph.D., evaluated Plaintiff once a year in 2007, 2008, 2009, and 2010, to determine whether Plaintiff qualified for assistance from the Colorado Department of Social Services under the Aid to Need and Disabled ("AND") program.  (Tr. 65, 319-22, 376-77.)  As part of Dr. Vega's examination, Dr. Vega completed a MED-9 form in which he opined that Plaintiff was disabled for twelve months or longer.  (Tr. 319-20.)  On October 7, 2008, Dr. Vega generated a narrative report in which he opined that Plaintiff has moderate and marked impairments with respect to her mental functioning.  (Tr. 352-57.)  Dr. Vega diagnosed Plaintiff with bipolar disorder, a history of somatoform disorder, nicotine dependence, and a learning disorder.  (Tr. 357.)  Dr. Vega assigned Plaintiff a GAF score of 55 to 60.  (Tr. 357.)  Dr. Vega, in part, assessed Plaintiff with the following residual mental functional capacity:

moderate in the following categories (1) ability to understand and remember very short and simple instructions; (2) ability to carry out very short and simple instructions; (3) ability to interact appropriately with the general public; (4) ability to ask simple questions or request assistance; (5) ability to accept instructions and respond appropriately to criticism from supervisors; (6) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (7) ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (8) ability to be aware of normal hazards and take appropriate precautions; (9) ability to travel in unfamiliar places or use public transportation; (10) ability to set realistic goals or make plans independently of others; and

marked in the following categories (1) ability to understand and remember detailed instructions; (2) ability to carry out detailed instructions; (3) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) ability to sustain an ordinary routine without special supervision; (5) ability to make simple work-related decisions; (6) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods. (Tr. 352-53.)

In May 2008, Musharraf Nizami, M.D., also treated Plaintiff for mental health issues. (Tr. 347-50.) Dr. Nizami diagnosed Plaintiff with a mood disorder and assigned Plaintiff a GAF score of 65. (Tr. 348.) Dr. Nizami agreed with Dr. Vega's October 7, 2008 report. (Tr. 359.)

Brett Valette, Ph.D., performed a consultative examination on April 18, 2007. (Tr. 293-96.) Plaintiff reported to Dr. Valette that she could not work because of her pain and because she was a slow learner and depressed. (Tr. 293.) Dr. Valette diagnosed Plaintiff with a "[r]ule out learning disorder", mild depression, and a non-specific personality disorder. (Tr. 295.) Dr. Valette also assigned Plaintiff a GAF score of 65. (Tr. 295.) Dr. Valette stated that Plaintiff's "mood disorder, from what she describes, obviously has to be quite mild." (Tr. 295.) Further, Dr. Valette found that Plaintiff "was able to pay attention and stay focused throughout [his] entire evaluation." (Tr. 295.) Dr. Valette found that Plaintiff did have "difficulties on the mental status exam, but [he] think[s] part of it is her passivity, and part of it is education." (Tr. 295.)

M. Berkowitz, a nonexamining agency physician, completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment form. (Tr. 297, 307, 311-13.) Dr. Berkowitz opined that Plaintiff has moderate limitations with respect to several mental

4

functions. (Tr. 311-12.) Dr. Berkowitz opined that Plaintiff was capable of simple work with reduced public contact. (Tr. 313.)

In July 2007, Richard King, M.D., at the Pueblo Community Health Center, began treating Plaintiff. (Tr. 343.) Dr. King diagnosed Plaintiff with depression and probable bipolar depression. (Tr. 344.) Dr. King orders refills for the prescriptions that Dr. Nizami had ordered for Plaintiff's mental health issues. (Tr. 55, 61.)

In June 2009, at the Pueblo Community Health Center, Tom Clemens, LCSW, diagnosed Plaintiff with a mood disorder and a personality disorder. (Tr. 405-08.) Clemens assigned Plaintiff a GAF score of 55. (Tr. 407.) Plaintiff attended therapy sessions with Clemens through November 2009. (Tr. 397-404.)

In 2010 and 2011, Plaintiff obtained psychotherapy from Elizabeth Richards, LCSW, at Pueblo Community Health Center. (Tr. 378, 381-95.) Richards opined that Plaintiff had marked and extreme impairments with respect to her mental capacities. (Tr. 378-79.)

With respect to the hearings testimony, Plaintiff testified that she has at times received therapy for her mental health issues. (Tr. 40, 54.) During the remand hearing, Plaintiff testified that she could not work because of her back, knees, and need for a well-vented area. (Tr. 66.) During the remand hearing, Plaintiff testified that she has experienced major improvements as a result of counseling through Pueblo Community Health Center and her medications. (Tr. 55, 61.) But she testified that her bipolar disorder would make it uncomfortable to work with a lot of people around. (Tr. 56.) However, Plaintiff also testified that she is getting better at dealing with people. (Tr. 58.) Further, Plaintiff testified that her memory and concentration and focus are deteriorating. (Tr. 56.) But Plaintiff also testified that she is able to concentrate and focus well enough and follow a TV show's plot and characters. (Tr. 57.)

### B. The ALJ's Decision

On June 22, 2011, ALJ Peggy S. Ball issued her decision at issue in this matter denying Plaintiff SSI. (Tr. 11-24.) In reaching her decision, ALJ Ball followed the five-step sequential evaluation process for evaluating disability claims. (Tr. 14-24.) ALJ Ball found that Plaintiff has not engaged in substantial gainful activity since March 1, 2007, the amended alleged onset date. (Tr. 16.) ALJ Ball found that Plaintiff has the following severe impairments: osteoarthritis, obesity, and mood disorder not otherwise specified. (Tr. 16.) ALJ Ball found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the Social Security Regulations. (Tr. 17-18.) ALJ Ball found Plaintiff's residual capacity ("RFC") to be as follows:

> to perform light work as defined in 20 C.F.R. 416.967(b) except that the work must not require more than occasional kneeling, crouching, crawling, stooping or bending, must not require more than occasional climbing of ladders or scaffolds, must not require standing/walking a[] total of more than four hours in an eight-hour workday, and must be able to be performed by a person who has moderate limitations in maintaining concentration, persistence and pace.

(Tr. 18-23.) ALJ Ball found that Plaintiff has no past relevant work. (Tr. 23.)

Based on the vocational expert's testimony, which in turn was predicated on ALJ Ball's functional capacity determination and in consideration of Plaintiff's age and education, ALJ Ball found that Plaintiff could perform jobs that exist in significant numbers in the national economy. (Tr. 23-24.)

Therefore, ALJ Ball concluded that Plaintiff was not disabled. (Tr. 24.)

### C. Procedural History

Plaintiff appealed the ALJ's decision at issue in this matter. (Tr. 7-10.) On October 11, 2012, the Appeals Council denied Plaintiff's appeal. (Tr. 1-6.) Plaintiff appeals that decision by bringing this lawsuit. (ECF No. 1.)

## II.     LEGAL STANDARDS

### A.     Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.  *Id*.  "It requires more than a scintilla, but less than preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g).  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues."  *Id.* at 479-480.  This duty exists even when the claimant is represented by counsel.  *Id.* at 480.

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir.

1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").

### B.     Evaluation of Disability

The criteria for SSI payments under Title XVI of the Act are determined on the basis of the individual's income, resources, and other relevant characteristics. 42 U.S.C. § 1382(c)(1). In addition to being financially eligible, the individual must file an application for SSI and be under a disability as defined in the Act. 42 U.S.C. § 1382.

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not [fewer] than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

There is a five-step sequence for evaluating a disability. *See* 20 C.F.R. §§ 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis). If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. § 416.920(a)(4)(i). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id*. at § 416.920(a)(4)(ii). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id*. at § 416.920(a)(4)(iii). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to fourth step. Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or

she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is able to perform his or her previous work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). Fifth, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. § 416.920(a)(4)(v).

### III.   ANALYSIS

Plaintiff explicitly raises two issues (ECF No. 13 at 17) for the Court's consideration, including that: (1) the ALJ failed to explain how much weight was actually given to Dr. Vega's opinion (ECF No. 13 at 21-24); and (2) the ALJ gave some weight to Dr. Vega's opinion, but did not explain why she rejected some of his restrictions (ECF No. 13 at 24-27). Plaintiff also argues, in her opening brief and more explicitly in her reply brief, that the "ALJ did not say how much weight she gave to Dr. Valette's opinion." (ECF No. 13 at 23.)

Because the Court finds that the ALJ committed legal error, the Court VACATES Defendant's decision.

#### A.   The ALJ Did Not Commit Reversible Error By Assigning Dr. Vega's Medical Opinion Limited Weight

Plaintiff argues that the ALJ erred by failing to explain how much weight she actually gave to Dr. Vega's medical opinion. The ALJ, however, explicitly stated that she gave "Dr. Vega's opinion only limited weight." (Tr. 22.) Despite Plaintiff's protestation to the contrary, nothing more was required of the ALJ other than to explain why she gave Dr. Vega's opinion limited weight. 20 C.F.R. § 416.927(b), (c); *see* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (providing that an ALJ must explain why an opinion was not adopted). In this matter, the

9

ALJ gave Dr. Vega's opinion limited weight because Dr. Vega's opinion that Plaintiff had marked and extreme limitations (Tr. 352-53) conflicted with his assigning Plaintiff a GAF score of 55 to 60[2] (Tr. 357). (Tr. 22.) The ALJ properly discounted the medical evidence that was internally inconsistent. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007).

Plaintiff argues that the phrase "limited" is too ambiguous to enable the Court to review the ALJ's decision. (ECF No. 16 at 4-5.) Plaintiff, however, takes no issue with the ALJ's assigning "considerable weight" (Tr. 21); "significant weight" (Tr. 21); or "little weight" (Tr. 22) to other individuals' opinions who either treated or consulted regarding Plaintiff's medical impairments. (*See generally* ECF No. 13.) The Tenth Circuit Court of Appeals instructs that the Court "should, indeed must, exercise common sense [and that] [t]he more comprehensive the ALJ's explanation, the easier [the Court's] task; but [the Court] cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Thus, the Court finds, similar to Plaintiff's lack of complaining as to the ALJ's weighting of the other medical opinions, the ALJ's assigning "limited weight" to Dr. Vega's opinion sufficient to enable review.

**B.     The ALJ Committed Reversible Error by Not Stating How Much Weight She Gave Dr. Valette's Opinion**

Plaintiff also argues, in her opening brief (ECF No. 13 at 23) and more explicitly in her reply brief (ECF No. 16 at 11), that the ALJ did not say how much weight she gave to Dr. Valette's opinion. Although Plaintiff did not identify this as a separate issue for the Court's consideration (ECF No. 13 at 17), the Court does not find such argument waived. *Cf. Rabon v. Astrue*, 464 F. App'x 732, 734 n.1 (10th Cir. 2012) (unpublished) (citation omitted). As alluded

---

[2] A GAF score of 51 to 60 indicates that the individual has "moderate difficulty in social, occupation, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Am. Psychiatric Ass'n *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)* 34 (4th ed. Text Revision 2000). The Court notes that the current Diagnostic and Statistical Manual of Mental Disorders (DSM-V) does not use GAF. Am. Psychiatric Ass'n *Diagnostic and Statistical Manual of Mental Disorders (DSM-V)* 16 (5th ed. 2013).

to previously, the ALJ was required to state how much weight he assigned to Dr. Valette's opinion. 20 C.F.R. § 416.927(b), (c); *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (citation omitted); *see* SSR 96-8p, 1996 WL 374184, at *7.

The ALJ did not state how much weight she gave to Dr. Valette's opinion. (*See generally* Tr. 14-24.) Rather, the ALJ only stated that she gave "more weight to the opinion of Dr. Valette than to the opinion of the State agency consultant." (Tr. 22.) Because the Court is unable to discern how much weight the ALJ assigned to Dr. Valette's opinion in relation to Dr. Vega and Richards' respective opinions (*see infra* Section III.C) as well as the ALJ's determination as to Plaintiff's credibility regarding her mental impairments, this error was not harmless. *Cf. Keyes-Zachary*, 695 F.3d at 1163 (holding that the ALJ's failure to assign a specific weight to a consulting examiner's opinion was harmless where the opinion was generally consistent with the ALJ's residual functional capacity).

For this reason, the Court finds that the ALJ committed reversible error by not assigning weight to Dr. Valette's opinion.

### C. The ALJ Committed Reversible Error by Not Providing the Court with Sufficient Reasons to Discern the ALJ's Constructing Plaintiff's Residual Mental Functional Capacity

Plaintiff argues that the ALJ erred by not "offer[ing] any reason for rejecting Dr. Vega's moderate mental impairments." (ECF No. 13 at 26 (emphasis removed).) Further, Plaintiff argues that the ALJ erred by accounting "only for Dr. Vega's impairments in the category of concentration and persistence, while ignoring without explanation, his restrictions in the other areas of mental functioning." (ECF No. 13 at 26.) The Court construes Plaintiff's arguments, in their essence, to be that the ALJ's residual mental functional capacity determination lacks reviewability because of the ALJ's failure to explain her decision.

Dr. Vega's residual mental functional capacity evaluation assigned Plaintiff both marked and moderate limitations in several different work-related areas. (*See* Tr. 352-53.) As discussed previously (*see supra* Section III.A), the ALJ properly discounted Dr. Vega's opinion due to its internal inconsistencies. Thus, the ALJ gave Dr. Vega's opinion, in its totality, only limited weight. (*See* Tr. 22.)

The ALJ, however, crafted Plaintiff's residual functional capacity with some moderate mental limitations: specifically, in maintaining concentration, persistence, and pace. (Tr. 18.) The Court recognizes that the ALJ stated that she made this finding after she

> considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 [C.F.R. §] 416.929 and SSRs 96-4p and 96-7p [and the] opinion evidence in accordance with the requirements of 20 [C.F.R. §] 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

(Tr. 18.) The Court is unable to discern, on the face of the ALJ's decision, from what source the ALJ determined that Plaintiff maintained the moderate mental limitations in concentration, persistence, and pace. Specifically, the Court is confounded by the ALJ's explanation that she gave "more weight to the opinion of Dr. Valette than to the opinion of the State agency consultant" (Tr. 22) despite the facts that Dr. Valette assigned Plaintiff a GAF score of 65 (Tr. 295) and stated that Plaintiff's "mood disorder, from what she describes, obviously has to be quite mild" (Tr. 295). A GAF score of 65 indicates that Plaintiff has "some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally function[s] pretty well, has some meaningful interpersonal relationships." *DSM-IV-TR* 34. It is the inability of the Court to discern the weight ALJ Ball assigned to Dr. Valette's opinion in relation to Dr. Vega's opinion that causes the Court to vacate the Commission's decision and remand for further proceedings. The ALJ should have explained why she crafted

the moderate mental limitations in specific areas and not others. *See Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) (citations omitted). The Court recognizes that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity question." *Chapo*, 682 F.3d at 1288. But as Defendant attempts to rehabilitate the ALJ's decision in its response brief by arguing that "the ALJ gave Plaintiff the benefit of the doubt"[3] (ECF No. 14 at 14) with respect to Plaintiff's mental limitations, the Court is left with the impression that it, as a reviewing body, is unable to discern from which evidentiary source(s) the mental limitations are derived. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004) (citations omitted) (holding that the sufficiency of the ALJ's decision must be evaluated based upon the reasons stated in the decision).

Because the ALJ's residual mental functional capacity restrictions are unexplained, the Court remands so that the ALJ can explain the evidentiary support for her RFC determination. *See Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

---

[3] The Court recognizes that the ALJ stated that "the above residual functional capacity assessment is supported by the evidence as a whole, including the claimant's ability to engage in a wide variety of daily activities and the medical evidence indicating that the claimant's impairments have responded to conservative management." (Tr. 23.) The Court, however, remains puzzled as how the ALJ arrived at moderate mental limitations with respect to concentration, persistence, and pace.

## IV. CONCLUSION

Based on the foregoing, the Court:

(1) VACATES Defendant's denial of supplemental security income; and

(2) REMANDS to the Commissioner for further proceedings as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

DATED this 16th day of July, 2015.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge